CLAIRE CAILLETEAU, Tutrix, *v.* LOUIS INGOUF, Administrator.

The validity of a judgment confirming the mother as natural tutrix of her minor children, cannot be called in question collaterally.

APPEAL from the District Court of the Parish of Avoyelles, *Cullom*, J. *Hitchborn & Barbin*, for plaintiff and appellant. *H. & S. L. Taylor*, for defendant.

VOORHIES, J. The plaintiff, claiming to be the natural tutrix of her child, *Irène Ingouf*, the sole heir of *Dominique Ingouf*, deceased, took a rule upon the administrator of his succession to compel him to file an account of his administration.

The administrator excepted to the plaintiff's demand, on the ground that she was not the tutrix of her child, as she alleged; but that she had forfeited that right by contracting a second marriage, without the assent of a family meeting.

It appears that she obtained a divorce from her first husband, *Dominique Ingouf*, on the 19th day of October, A. D. 1854, the judgment giving her the exclusive care, control and superintendence of her infant daughter, *Irène*, the issue of their marriage. On the 23d day of December of the same year, she was married to *Alfred Broutin*. Several months having elapsed, *Dominique Ingouf*, her first husband, died; and she then was confirmed, and qualified as the natural tutrix of her child, *Irène*.

The question to be decided is, whether these proceedings are absolutely null and void; and whether they can be enquired into collaterally by the administrator in this instance.

The Civil Code says that, "After the dissolution of marriage by the death of either husband or wife, the tutorship of the minor children belongs of right to the surviving mother or father: that is what is called tutorship by nature." C. C. 268. By the preceding Article the father is, during the marriage, the administrator of the minor's property. But it is only in case the marriage is dissolved by the death of one of the spouses, that natural tutorship takes place. When the dissolution is the result of a judgment of divorce, neither the father nor mother can claim the natural tutorship, because the Code has provided specially for that contingency. Article 153 reads: "In all cases of separation, the children shall be placed under the care of the party who shall have obtained the separation, unless the Judge shall, for the greater advantage of the children, and with the advice of the meeting of the family, order that some or all of them should be intrusted to the care of the other party."

In the case of *Acosta* v. *Robin*, this court said: "But, in our judgment, there can be no tutor to a child, while the father and mother are alive. The first law of the 16th title of the 6th Partida declares *tutela*, in Latin, to be that guardianship which is given over minor *orphan* children, not minors alone, as stated in Moreau & Carleton's translation of the law...... Our Code declares tutorship by nature to be, the right of the surviving father, or mother, on the dissolution of the marriage by the death of one of them, to be tutor of the children. It contemplates the father to act in another character during the marriage, and calls him the administrator of the estate of his minor children." 7 N. S., 387, *Acosta* v. *Robin;* Paillete on Code Napoleon, Art. 389; Toullier, vol. 2, liv. 1, tit. 10, No. 1090; 12 R. R., 172.

There is no special provision in the Civil Code, as to the tutorship of minors from the time of the dissolution of marriage by divorce; indeed, the Code provides simply for the action of separation, and not of divorce as now known, although Article 133 says that "the bond of matrimony is dissolved by a divorce legally obtained." But then it goes on to state that, "separation from bed and board does not dissolve the bond of matrimony, since the separated husband and wife are not at liberty to marry again; but it puts an end to their conjugal cohabitation and to the common concerns which existed between them." That is what the Civil Code meant by the term *divorce*. By a subsequent Act of the Legislature, this matter was more minutely provided for, and the distinction between the effects of separation and divorce laid down, so that now the judgment of divorce dissolves the bonds of matrimony, leaving the spouses at liberty to marry again. Acts 1827, p. 130.

The case before us could not have arisen under the provisions of the Civil Code, because the plaintiff would not have been at liberty to marry again before the death of her first husband. The forfeiture of the right of tutorship declared in Article 272 C. C., had no possible reference to a case where the second marriage was contracted at a time when both father and mother were alive, and neither could be appointed natural tutor or tutrix. The plaintiff, under the Act of the Legislature, had the undoubted right to marry again, after being divorced from her first husband; yet her right to the natural tutorship could not accrue before his demise : hence, she could not be required to pursue the idle ceremony of procuring the advice of a family· meeting " for the purpose of deciding whether she should remain tutrix "—hence, her failure to do so did not deprive her *ipso facto* of the tutorship.

It is not necessary to decide whether, after the death of her first husband, the plaintiff, in order to be confirmed as natural tutrix, should have first convoked a family meeting. She now holds the appointment of tutrix by a judgment rendered since the death of her first husband, and as such she has qualified. It is clear that the defendant cannot question collaterally the validity of this judgment. The fact that he is the minor's grand-father may enable him to enquire into the merits of these proceedings, with the view of provoking the appointment of another tutor, or his own appointment, to represent this minor ; but, conceding his right to assail these proceedings for that purpose, and to avail himself of the alleged forfeiture of the right of tutorship by the plaintiff, it does not follow that he has the right to disregard·the action of the court in this respect, and to resist collaterally its effects, for the purpose of withholding the rendition of an account of his administration.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed, and that this case be remanded for further proceedings ; the appellee paying the costs of appeal.